## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND CERILLI, | ) | 3:21-CV-1738 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUSAN BYSIEWICZ, et al., | ) | |
| *Defendants*. | ) | March 25, 2023 |
| | ) | |
| | ) | |

## RULING AND ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this civil rights action, incarcerated Plaintiff Raymond Cerilli alleges Defendants Hannah Sullivan and James Smyth violated his Eighth Amendment rights by failing to adequately address his medical issues. Presently pending before the Court is Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies, and a motion for summary judgment filed by Plaintiff that appears to concern breach of a settlement agreement in an earlier case between Plaintiff and officials of the Connecticut Department of Correction ("DOC"). For the reasons discussed herein, the Court GRANTS Defendants' motion and DISMISSES the case in its entirety. In light of this ruling, Plaintiff's motion for summary judgment is DENIED AS MOOT.

### I.    PROCEDURAL HISTORY

On December 30, 2021, Raymond Cerilli, a sentenced inmate in the custody of DOC,[1] filed the instant action pursuant to 42 U.S.C. § 1983 against numerous DOC officials, alleging various

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Information on the Connecticut DOC website under the inmate search function shows that Cerilli is a sentenced inmate who is presently incarcerated at Cheshire Correctional Institution ("Cheshire"). *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=162375

violations of his rights under the United States Constitution during his incarceration.  Compl., ECF No. 1.  After initial review, the Court dismissed Plaintiff's complaint in its entirety without prejudice to refiling, based on his failure to adequately allege any cognizable claims for relief. Initial Review Order ("IRO"), ECF No. 21.

Plaintiff then filed an amended complaint on February 18, 2022.  ECF No. 25.  After review of Plaintiff's amended complaint, the Court permitted him to proceed on only his Eighth Amendment deliberate indifference claims against Defendants Dr. James Smyth and Physician Assistant ("PA") Nurse Hannah Sullivan.  Am. Compl. IRO, ECF No. 33.

In its scheduling order, the Court permitted Defendants the opportunity to file an early dispositive motion regarding exhaustion of administrative remedies.  ECF No. 64.  Defendants now move for summary judgment, arguing that Plaintiff failed to exhaust his available administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA") with respect to the claims he is pursuing in this litigation.  Plaintiff has filed several oppositions to the motion for summary judgment.  *See* ECF Nos. 105, 121, 124, 139.  He has also filed his own motion for summary judgment, apparently contending that DOC officials breached a settlement agreement in an unrelated case.  *See* ECF No. 106.  Defendants oppose Plaintiff's motion.

## II.    FACTUAL BACKGROUND

The following factual background reflects the Court's review of the amended complaint,[2] Defendants' Local Rule 56(a) statements of facts, and all supporting materials.  *See* Am. Compl.,

---

[2] *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

ECF No. 25; Defs.' Rule 56(a)1, ECF No. 99-2.  All facts are undisputed unless otherwise indicated.[3]

### A.  The Previous Settlement

Before delving into the facts underlying the instant dispute, the Court takes a short detour through Plaintiff's prior litigation history, as both Plaintiff and Defendants reference a prior settlement in their submissions.  On September 20, 2021, Plaintiff executed a settlement and release agreement with the State of Connecticut in the case captioned *Cerilli v. Lamont, et al.*, D. Conn. Civ. No. 3:20-cv-1425 (KAD).  Defs.' L. R. Rule 56(a)1 St., ECF No. 99-2, ¶ 3; ECF No. 99-8.  Under the settlement agreement, Plaintiff agreed to dismiss, with prejudice, that action and withdraw his claims in four other matters.  *See* ECF No. 99-8 at 2.   In return, the State agreed to give Plaintiff $2,000 and ensure he received several medical treatments, including a referral from Defendant Smith for Plaintiff "to go to UCONN for an ophthalmology consult for light sensitivity issues and cataract surgery."  *Id*. at 2–3.  Plaintiff further released all Connecticut state employees and officials from all claims that he may have brought—or that "may in the future be brought"— in federal or Connecticut state courts and various administrative bodies "by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of [the settlement agreement and release (September 20, 2021)]."  *Id*. at 3.

---

[3] Defendants provided Plaintiff a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. ECF No. 99-3.  Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."  Local Rule 56(a)3 provides that "each denial in an opponent's Local Rule 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."  Plaintiff has not filed a Local Rule 56(a)2 statement in compliance with this District's Local Rules of Civil Procedure.  Accordingly, the Court considers Defendants' statements of fact to be true where they are supported by evidence.

In his amended complaint, Plaintiff tangentially references this settlement and potentially alleges that Defendants breached this agreement. Am. Compl. at 14, 17. In the second IRO issued in this case however, the Court permitted only claims against Defendants Smyth and Sullivan, based on specific allegations in the amended complaint, to proceed. ECF No. 33 at 13. The Court did not allow a claim for breach of the settlement agreement to proceed. Thus, there is no claim for breach of the settlement agreement currently pending.

### B.  The Instant Action

Turning now to the allegations in the present action, Plaintiff's amended complaint spans forty-one pages, and contains information written on all areas of the pages including handwritten notes in the margins of printed documents. *See generally* Am. Compl. ECF No. 25. Many of these allegations relate to incidents or information that is not relevant to the Plaintiff's remaining claims. Therefore, the Court discusses only that information that is pertinent to the instant motion.

First, Plaintiff asserts that he informed Dr. Smyth on February 1, 2022, about his need for light sensitivity tests while he was at the hospital. *Id.* at 17. In response, Dr. Smyth stated that Plaintiff was "all set" and there was no need for sunglasses in the prison. *Id.* Dr. Smyth did allegedly send Plaintiff for more tests, but Plaintiff alleges he was "sent out for [the] wrong tests" regarding light sensitivity and was refused further treatment. *Id.* Dr. Smyth also allegedly denied him eye surgery "to correct . . . foot-ball eyes." *Id.* at 18.

As for Defendant Sullivan, Plaintiff claims he wrote for help while "suffering high blood pressure" and a "nosebleed" but she refused to help. *Id.* at 20. Plaintiff references a specific nosebleed on February 14, 2022, and also asserts that Defendant Sullivan "stopped [his] toe surgery," and conducted the "wrong tests on [his] neck and chest." *Id.* He further claims that she failed to act despite being provided a medical report regarding his conditions. *Id.* at 29.

III.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with

5

respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).  "[O]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## IV.   DISCUSSION

Defendants' motion for summary judgment argues that Plaintiff's claims should be dismissed due to his failure to exhaust the prison's administrative remedies, as required by the PLRA.  For the reasons described below, the Court agrees that Plaintiff has failed to exhaust his administrative remedies related to the claims that are live in this action.  Therefore, the Court grants Defendant's motion for summary judgment.

The PLRA mandates that incarcerated plaintiffs exhaust all administrative remedies available to them before filing a claim under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The PLRA requires "proper exhaustion," meaning that plaintiffs must exhaust all available remedies "in compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The requirement of exhaustion of administrative remedies serves "two main purposes."  *Id.* at 89 (addressing exhaustion requirements under the PLRA).  First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."  *Id.* (cleaned up).  Second, exhaustion promotes efficiency because "[c]laims can be

resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Although a plaintiff "need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims." *Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020) (summary order); *Demuth v. White*, No. 9:18-CV-915, 2020 WL 1030649, at *4 (N.D.N.Y. Mar. 3, 2020) (a plaintiff's claim may be "unexhausted" when the plaintiff "fails to fairly raise [their] claims in the grievance"). To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (internal quotations omitted). If a plaintiff does not provide such description or notice, correctional officials are not afforded the "opportunity to address complaints internally," which Congress has required before a plaintiff can pursue a federal case. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Notwithstanding the above, the exhaustion requirement may be excused when the administrative remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642-643 (2016). This requires an inmate "to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The Supreme Court has established three circumstances where administrative procedure is considered unavailable. These are: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-644.  "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

A.  Available Administrative Remedies

For inmates housed in Connecticut state correctional facilities, the DOC's Administrative Directives provide the specific requirements an inmate must follow prior to filing a lawsuit in federal court.  When "an inmate to seek[s] formal review of any health care provision, practice, diagnosis or treatment" at Connecticut DOC facilities they must follow the procedures laid out in Administrative Directive 8.9.  The process articulated therein enables the DOC "to identify individual and systemic problems, to resolve health care issues in a timely manner, and to facilitate the accomplishment of its mission."  A.D. 8.9(1), ECF No. 99-7 at 2.

This directive allows inmates to seek Health Services Administrative Remedies ("HSARs").  There are two types of HSARs available to an inmate:  remedies concerning (1) a diagnosis or treatment made by a medical provider, including the decision to provide no treatment for an inmate; and remedies concerning (2) an administrative issue to address "a practice, procedure, administrative provision or policy or an allegation of improper conduct by a health services provider."  A.D. 8.9(6)(a)(i)-(ii), ECF No. 99-7 at 7.  For ease of reference, the Court will refer to these HSARs as Diagnostic HSARs and Administrative HSARs.

Regardless of what type of HSAR an inmate seeks to file, the process involves several steps.  First, prior to filing any HSAR, the inmate "must attempt to seek informal resolution" of the issue, including by attempting to resolve the issue verbally with the appropriate staff member.

A.D. 8.9(6)(b)(ii)(1)–(2), ECF No. 99-7 at 7.  If the verbal communication is unsuccessful, the inmate "shall submit a written request via CN 9601, Inmate Request Form." A.D. 8.9(6)(b)(ii)(3), ECF No. 99-7 at 7.  Despite that this second request is in writing, it is still considered an attempt at informal resolution of the issue.  If an inmate submits a written request, a DOC official must respond within 15 business days from receipt of the written inmate request.  A.D. 8.9(6)(b)(ii)(7), ECF No. 99-7 at 7.

Upon receiving this response, if the inmate is not satisfied with the offered informal resolution, the inmate may file an HSAR.  A.D. 8.9(6)(b)(iii)(1), ECF No. 99-7 at 7–8.  The inmate must either attach the Inmate Request Form, along with the response he received, or the inmate must include an explanation indicating why the Inmate Request Form is not attached.  A.D. 8.9(6)(b)(iii)(2), ECF No. 99-7 at 8.  The inmate must also submit a completed CN 8901 form (otherwise known as an HSAR Form-Level 1).  A.D. 8.9(6)(b)(iii)(3), ECF No. 99-7 at 8.  Once an inmate has all of the necessary documentation, the inmate must place it in the HSAR box.  *Id.*  The inmate's HSAR Form-Level 1 "must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the HSAR." A.D. 8.9(6)(b)(iii)(4), ECF No. 99-7 at 8.

If an inmate seeks to file a Diagnostic HSAR, the inmate must "check the 'Diagnosis/Treatment' box on the CN 8901, HSAR Form-Level 1[.]" A.D. 8.9(6)(c)(i)(1), ECF No. 99-7 at 8.  The inmate "shall concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment" and "shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired."  *Id.*  Upon receipt of an inmate's Diagnostic HSAR Form-Level 1, "the HSAR Coordinator shall consult with the provider who made the decision to determine what action, if

any, should be taken." A.D. 8.9(6)(c)(i)(2)(a), ECF No. 99-7 at 8. "If the provider decides that the existing diagnosis or treatment is appropriate, the remedy shall be denied and not subject to further appeal." *Id.* "If the provider determines further evaluation is necessary, the provider may schedule a Health Services Review appointment[,]" and, "[i]f no change in diagnosis or treatment results from this review, the inmate may not request a second review for the same issue unless his or her clinical situation has changed significantly since the first review." A.D. 8.9(6)(c)(i)(2)(b), ECF No. 99-7 at 8. In essence, if an inmate files a Diagnostic HSAR that is denied, there are no further appeals to be taken.

An inmate seeking review of an administrative issue must also submit a completed HSAR Form-Level 1, and a response shall be issued in writing by the HSAR Coordinator within thirty business days of receipt of the complaint. A.D. 8.9(6)(c)(ii)(1) & (3), ECF No. 99-7 at 8–9. If the inmate's Administrative HSAR is not in compliance with the terms of Directive 8.9 it shall be rejected, but the inmate may correct the deficiency within five calendar days. A.D. 8.9(6)(c)(ii)(2), ECF No. 99-7 at 9. If the inmate does not correct the defect, the request for the Administrative HSAR will be rejected without an opportunity for appeal. *Id.*

Once the Administrative HSAR Form-Level 1 is correctly submitted, if the inmate does not receive a response within 30 business days (and the inmate is not issued an Inmate Administrative Remedies Procedure – Notice of Time Extension), the inmate may file an HSAR Form-Level 2. ("Level 2 Appeal"). A.D. 8.9(6)(c)(ii)(4)(a), ECF No. 99-7 at 9. Alternatively, if the inmate receives a response to his Administrative HSAR, but is dissatisfied with the response, the inmate may, within five calendar days, also file a Level 2 Appeal. A.D. 8.9(6)(c)(iii)(1). The Regional Chief Operating Officer shall conduct the Level 2 review and issue a response in writing within 30 business days. A.D. 8.9(6)(c)(iii)(2)-(3), ECF No. 99-7 at 9.

If the inmate does not receive a response to the Level 2 Appeal within 30 business days (and the inmate is not issued an Inmate Administrative Remedies Procedure – Notice of Time Extension), the inmate may file a CN 8903, Appeal of HSAR Form-Level 3, within a prescribed time period. ("Level 3 Appeal") A.D. 8.9(6)(c)(iii)(4)(a), ECF No. 99-7 at 9.

Level 2 Appeals shall be the final level of review unless the appeal challenges "Department-level policy," "the integrity of the [HSAR] procedure," or a failure to receive a timely response to a Level 2 Appeal.  A.D. 8.9(6)(c)(iii)(5); A.D. 8.9(6)(c)(iv)(1), ECF No. 99-7 at 9.

A Level 3 Appeal, must be filed within five calendar days of receipt of the returned Level-2 Appeal.  A.D. 8.9(6)(c)(iv)(2), ECF No. 99-7 at 10.  The Chief Operating Officer or designee in consultation with the Chief clinical lead (as appropriate) shall review the Level 3 Appeal and provide a response within thirty business days of receipt.  A.D. 8.9(6)(c)(iv)(3) & (4), ECF No. 99-7 at 10.  There is no appeal from a Level-3 response.  A.D. 8.9(6)(c)(iv)(5), ECF No. 99-7 at 10.

B.  <u>Plaintiff Has Failed to Exhaust Available Administrative Remedies</u>

Having discussed the process Plaintiff was required to complete prior to filing this action, the Court now turns to examine whether he did in fact complete this process.  In support of their motion for summary judgment, Defendants have submitted the declaration of Osborn HSAR Coordinator Michelle Cyr (the "Coordinator").  The Coordinator ensures that HSARs are collected, properly logged, and routed for evaluation and response.  Defs.' Rule L. R. 56(a)1 St., ¶ 6; *see* A.D. 8.9(5)(e) & (g), ECF No. 99-7 at 7.  The Coordinator maintains the log of HSARs filed by inmates.  Defs.' L. R. 56(a)1 St., ¶ 8.  Here, the Coordinator conducted a review of Plaintiff's filings under Directive 8.9 between August 1, 2021, and March 31, 2022, ECF No. 99-4, the electronic HSAR log relevant to Plaintiff's filings during that same time period, ECF No.

99-5, and copies of Plaintiff's administrative remedies requests filed during that period, ECF No. 99-6.

These records show that during the time in question, Plaintiff submitted numerous HSAR grievances. The Court has reviewed each of these and does not believe it is necessary to lay out in detail the contents of each HSAR request and appeal, that Plaintiff filed during this timeframe. Instead, it is sufficient to say that none of these complaints relate to the issues in this litigation pertaining to either Defendant.

When faced with this evidence, Plaintiff simply states that he did in fact exhaust the available administrative remedies. ECF No. 121 at 1.[4] Plaintiff has presented no evidence to support this contention, however. Specifically, he has failed to show that he initiated the grievance process for his complaints about Dr. Smyth and P.A. Sullivan raised here prior to filing this litigation. Instead, Plaintiff provides an Inmate Request Form, and Form Level-1 from April and May of 2022. ECF No. 121 at 101–103. These are the only administrative complaint forms the Court has been able to locate that address the issues raised in this litigation. Specifically, they complain that Defendant Smyth has refused to treat plaintiff and that he has thus not had his eyes treated for severe light sensitivity. *Id.*

Unfortunately for Plaintiff, it long settled in the Second Circuit that a plaintiff cannot cure his failure to exhaust available administrative remedies after filing his complaint; he must exhaust them prior to filing the action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-CV-903

---

[4] In opposition to Defendants' motion for summary judgment, Plaintiff has submitted numerous objections, affidavits, and documents, that he believes show Defendants' motion should be denied. *See e.g.,* ECF Nos. 105, 121, 124, 132, 139. Included in these filings are a wealth of medical records, communications regarding Plaintiff's medical treatment, and communications with at least one attorney about the instant litigation. *See generally* ECF No. 121. The Court has reviewed the contents of each of Plaintiff's filings and cites only to the relevant information from each where appropriate.

(SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019).  As Plaintiff has provided no evidence that he attempted to exhaust his available remedies prior to filing the instant action, he has failed to raise a question of material fact regarding this issue.

C.  <u>Plaintiff Was Not Excused from the Exhaustion Requirement</u>

Having determined that Plaintiff has not actually exhausted the administrative remedies available to him, the Court now examines whether there is a legal basis to excuse Plaintiff from this requirement.   As mentioned earlier, the exhaustion requirement is excused in three circumstances: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 643-644.  None of these three situations is present in this case.

First, the evidence submitted by Defendants demonstrates that Administrative Directive 8.9 does not operate as a dead end.  For example, on December 9, 2021, Plaintiff submitted a grievance complaining that his request for a dental cleaning had been ignored.  ECF No. 99-6 at 4.  After submitting this complaint, he received a response confirming that Plaintiff was seen for a dental check-up and cleaning on December 17, 2021.  *Id.* at 5.  Plaintiff seems to have acknowledged the fact that such a cleaning took place, as there are no further issues in the record related to this complaint.  This example shows there is no question of material fact that the grievance process in place does allow for inmates like Plaintiff to adequately address issues that should be addressed.

13

Second, the administrative remedy procedure is not so opaque that it becomes practically incapable of being used.  While the procedures employed in relation to complaints for medical treatment are no doubt complicated and require several steps, Plaintiff has used them numerous times during his incarceration, as demonstrated by the voluminous record before the Court. Moreover, as discussed above, Plaintiff has not only used the procedures, but used them successfully to obtain relief.  Thus, there is no question of material fact that the procedures are capable of being used.

Finally, the Court examines whether Plaintiff has been prevented from using the administrative process through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-644.  As to this scenario, Plaintiff claims that he was threatened by people at Osborn to stop filing complaints and grievances.  ECF No. 105-2 ¶ 6.  Plaintiff, however, provides no information related to when, or how, or where this incident occurred.  Such conclusory arguments are not enough to defeat a motion for summary judgment.  *See Jackson v. Downstate Corr. Facility*, No. 16-cv-0267 (NSR), 2018 WL 3650136, at *6 (S.D.N.Y. July 31, 2018) (rejecting argument that a threat prevented the plaintiff from filing a grievance as "wholly unsupported by any evidence and [as] conclusory insofar as [the] [p]laintiff point[ed] to no facts regarding such intimidation"); *Medina v. Kaplan*, No. 16-cv-7223 (KMK), 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) ("Conclusory allegations of intimidation are insufficient to establish the unavailability of administrative remedies. . . . There is no allegation that the threat was even related to her grievance and ability to exhaust available administrative relief."); *Heyliger v. Gebler,* No. 06-cv-6220 (FPG), 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting summary judgment, notwithstanding plaintiff's testimony that his "original grievance was discarded by

prison officials," where plaintiff "never described or named the individual who allegedly took this action"), *aff'd,* 624 Fed. App'x. 780 (2d Cir. 2015) (summary order).

Moreover, Plaintiff provides no evidence that he was actually prevented from filing any additional grievances. In fact, Plaintiff was permitted to file a grievance on the very topics at issue in the instant litigation. Thus, there are no questions of material fact concerning whether Plaintiff was prevented from using the administrative process by Defendants through machination, misrepresentation, or intimidation.

Finally, Plaintiff argues that the Second Circuit's decision in *Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020), allows his claims to proceed. *See* ECF No. 122 at 3. Contrary to Plaintiff's assertion, *Hayes* does no such thing. In *Hayes*, the Second Circuit held that an inmate exhausts his administrative remedies where he has satisfied all of the steps under a grievance scheme, but the correctional department failed to respond within a mandatory deadline. *Id.* at 270-272 (inmate-plaintiff "need not wait indefinitely after the agency fails to follow its own deadline at the final stage of appeal" but must "actually wait for that deadline to expire before filing suit."). Here, Plaintiff has not shown that he filed a grievance related to the instant action that went unanswered. Thus, *Hayes* simply does not apply to the instant action.

## V.   CONCLUSION

For the reasons discussed herein, Plaintiff failed to exhaust the available administrative remedies prior to filing the instant action and Defendants' motion for summary judgment is GRANTED. In light of this decision, Plaintiff's motion for summary judgment is DENIED AS

MOOT.[5]  Plaintiff's claims are DISMISSED.  The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

      **SO ORDERED** at Hartford, Connecticut, this 25th day of March, 2023.

                      */s/ Sarala V. Nagala*
                      SARALA V. NAGALA
                      UNITED STATES DISTRICT JUDGE

---

[5] The Court notes that the arguments in Plaintiff's affirmative summary judgment motion are unclear to say the least, but appear to address breach of the settlement agreement in the prior litigation, which is not at issue in the present matter.  Therefore, the Court need not, and will not, further examine any contentions contained therein.